IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JANIEKA HARRISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:25-cv-00560-RAH |
| | ) | |
| ALABAMA DEPARTMENT OF | ) | |
| HUMAN RESOURCES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is the *Motion to Dismiss Amended Complaint* filed by Defendants Angie Flourney and Marcus Judkins (doc. 52), the *Motion to Dismiss Plaintiff's Amended Complaint* (doc. 57) filed by Defendant Marilyn Loyd, the *Motion to Dismiss* (doc. 60) filed by Defendants Olasta Finley and Gwen Finley, and the *Motion to Dismiss* (doc. 61) filed by Defendant Lauren Lauderdale.  For the reasons that follow, the motions will be granted.  Further, as to the unserved defendant, the case will be dismissed for lack of subject matter jurisdiction.

## BACKGROUND

This is the fourth federal lawsuit filed by pro se Plaintiff Janieka Harrison over the past 18 months concerning the ongoing state court custody/juvenile proceedings involving her children.

On October 21, 2024, Harrison sued the Chambers County Police Department, the Alabama Department of Human Resources ("ADHR"), and Alliecia Meadows for alleged unlawful arrest and kidnapping involving her and her children when law enforcement and ADHR entered her home and removed her children. *See* Case No.

3:24-cv-00669-RAH-CWB (M.D. Ala. Apr. 14, 2025).  That case was dismissed on April 14, 2025.

On December 6, 2024, Harrison sued Judge Myron Milford, the judge presiding over the custody proceedings[1] involving her children.  *See* Case No. 3:24-cv-00788-RAH-JTA, (M.D. Ala. July 18, 2025). In her Complaint, Harrison claimed that representatives from ADHR entered her home on October 13, 2024, wrongfully implemented a "safety plan" concerning her children including drug testing, and that Judge Milford authorized these actions in violation of her due process rights and her fundamental rights as a parent.  That case was dismissed on July 18, 2025.

That same day, Harrison separately sued ADHR.  *See*  Case No. 3:24-cv-00789-ECM-JTA (M.D. Ala. Mar. 13, 2025). In her habeas petition, she claimed that representatives from ADHR entered her home without probable cause, a warrant or consent, and unlawfully removed her children from her care and placed them in foster care.   That case was dismissed on March 13, 2025.

On July 23, 2025, approximately five days after her lawsuit against Judge Milford was dismissed, Harrison filed this lawsuit against ADHR, Angie Flourney (employed by ADHR), Marcus Judkins (employed by ADHR), Lauren Lauderdale (the court-appointed guardian-ad-litem), Gwen and Olasta Finley (foster parents), Robert Stewart (the children's father), Angela Stewart (grandparent), Loretta Conger (grandparent) and Marilyn Loyd (landlord).  Although the Complaint, as amended, is extremely broad and vague, Harrison's Complaint again concerns the removal of her children from her custody through the ongoing state court custody/juvenile legal

---

[1] State court custody/juvenile proceedings generally are confidential.  As such, the Court is unable to review AlaFile to determine the status of those proceedings.  However, a review of AlaFile reveals that Harrison sued ADHR in the Circuit Court of Chambers County on March 18, 2025, concerning the same custody issue.  *See* Case No. Cv-29-15.  That case was dismissed on March 31, 2025.  In a response filed by ADHR in that proceeding, ADHR identified the juvenile case as Case No. JU-2024-109, Chambers County Juvenile Court, and noted that Harrison filed a pro se habeas petition in that proceeding in December 2024.

proceedings. This time she has added employees of ADHR, the court-appointed guardian-ad-litem, the children's father and grandparents, and a landlord, all of whom played a role in the state court proceeding. Harrison seeks damages. She also seeks an order from this Court that returns her children to her custody and grants injunctive relief preventing the placement of her children and interference with her alleged custodial rights by any of the Defendants.

The Defendants have moved to dismiss raising a host of arguments for dismissal, including the shotgun nature of the Amended Complaint, *Rooker-Feldman*, and *Younger* abstention.

## LEGAL STANDARD

Harrison bears the burden of establishing that the Court has subject matter jurisdiction. *Fox v. Fla. Dep't of Children & Families*, 828 F. App'x 639, 640 (11th Cir. 2020) (per curiam).

## DISCUSSION

The Defendants[2], except for Defendant Loyd, assert that this Court lacks subject matter jurisdiction under *Rooker-Feldman* and *Younger*. They also claim that the Amended Complaint is an improper shotgun pleading. The Court agrees in all respects. And since the Court always must examine its own jurisdiction, sua sponte if necessary, this Court also concludes that it is appropriate to decline jurisdiction under the domestic relations exception.

First, "[a]s a general rule, the federal courts refuse to hear suits for 'divorce and alimony, child custody actions, disputes over visitation rights, suits to establish paternity and to obtain child support, and actions to enforce separation or divorce decrees still subject to state court modification.'" *Kirby v. Mellenger*, 830 F.2d 176,

---

[2] Defendant Alabama Department of Human Resources has not been served. To the extent that any of the Defendants have not been served, they are also due to be dismissed given this Court's lack of jurisdiction over the action.

3

177–78 (11th Cir. 1987) (per curiam) (quoting *Crouch v. Crouch*, 566 F.2d 486, 487 (5th Cir. 1978))[3] (additional citations omitted). Indeed, "[t]he federal judiciary has traditionally abstained from deciding cases concerning domestic relations," including child custody cases. *Ingram v. Hayes*, 866 F.2d 368, 369 (11th Cir. 1988) (per curiam). Courts frequently apply this domestic relations exception to cases involving diversity jurisdiction but have split on whether it applies to cases involving federal question jurisdiction. *See id.* at 370–72. The Eleventh Circuit has not expressly answered this question, but it has noted that "the courts that liberally apply the domestic relations exception to federal question jurisdiction" have not done so in all cases, but only "when the federal court would necessarily become enmeshed in the domestic factual disputes." *Id.* at 372; *see also Carver v. Carver*, 954 F.2d 1573, 1578 ("[T]he domestic relations exception has been applied only to diversity jurisdiction or federal question jurisdiction which would require adjudication of domestic affairs.") (citation omitted). District courts in this circuit have similarly applied the domestic relations exception to cases arising under federal question jurisdiction when hearing the dispute would "deeply involve" the courts in "adjudicating domestic matters." *Deaton v. Stephens*, No. 2:23-cv-713-RDP, 2023 WL 6131452, at *8 (N.D. Ala. Sep. 19, 2023) (quoting *Murphy v. Alabama*, No. 2:20-00183-KD-N, 2020 WL 7395139, at *3 (S.D. Ala. Dec. 16, 2020)) (collecting cases); *Jones v. Madison Cnty. Dep't of Hum. Res.*, No. 5:25-cv-261-LCB, 2025 WL 1347477, at *2–3 (N.D. Ala. May 8, 2025) (declining to exercise jurisdiction under the domestic relations exception to adjudicate claims stemming from a disputed child custody matter).

---

[3] In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Second, district courts lack jurisdiction over final state-court judgments under the *Rooker-Feldman* doctrine. *Fox*, 828 F. App'x at 640. "[T]he . . . doctrine applies to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* (quoting *Nicholson v. Shafe*, 558 F.3d 1266, 1274 (11th Cir. 2009)). "The doctrine applies not only to federal claims actually raised in the state court, but also to claims that were not raised in the state court but are inextricably intertwined with the state court's judgment." *Id.* (citing *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009)). "A claim is inextricably intertwined if it would effectively nullify the state-court judgment or if it succeeds only to the extent the state court wrongly decided the issues." *Id.* (citing *Casale*, 558 F.3d at 1260). *Rooker-Feldman* has been applied to, among other types of cases, those concerning child-custody and family law proceedings. *Fox*, 828 F. App'x at 640 (citations omitted).

Third, the abstention doctrine established in *Younger* "bars federal court intervention in state noncriminal proceedings where the proceedings constitute an ongoing state judicial proceeding, the proceedings implicate important state interests, and there is an adequate opportunity in the state proceedings to raise constitutional challenges." *Adams v. Florida*, 185 F. App'x 816, 816–17 (11th Cir. 2006) (per curiam) (citing *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003)). *See also Narciso v. Walker*, 811 F. App'x 600, 601–03 (11th Cir. 2020) (per curiam) (citing *Younger* in affirming the dismissal of a plaintiff's federal court challenge under 42 U.S.C. § 1983 to child custody proceeding pending in state court). The Supreme Court has made clear that *Younger* abstention is limited to three "exceptional" categories: (1) "state criminal prosecutions[,]" (2) "civil enforcement proceedings[,]" and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*

*Commc'ns Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367–68 (1989)). At issue here is the exact type of civil enforcement for which *Younger* has been extended to cover, one which is "characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act." *Id.* at 79; *see also Moore v. Sims*, 442 U.S. 415, 419–20 (1979) (extending *Younger* to state-initiated proceeding to gain custody of children allegedly abused by their parents).

Harrison's claims and requested relief in this case deeply involve adjudications in domestic/juvenile matters and constitute a collateral attack to the state court custody/juvenile proceedings involving her children. Exercising jurisdiction over this kind of collateral attack on state-court proceedings, including judgments and orders already entered, would require the Court to interfere with that ongoing proceeding or the judgments and orders entered by an Alabama state juvenile court—exactly what these doctrines are designed to protect against. As such, this case is due to be dismissed on jurisdiction and abstention grounds.[4]

But those are not the only reasons that Harrison's Amended Complaint is due to be dismissed, as the Amended Complaint is also a shotgun pleading and fails to state a claim. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In addition,

---

[4] That Defendant Loyd did not make jurisdiction-related arguments in her *Motion to Dismiss* is without consequence because this Court is under a constant duty to examine its jurisdiction and may act *sua sponte* when a jurisdictional issue arises, as it does here. *Linares v. Armor Corr. Health Servs., Inc.*, 591 F.App'x 924 (11th Cir. 2015). Indeed, "it is incumbent upon [a] federal court[ ] . . . to constantly examine the basis of jurisdiction, doing so on [its] own motion if necessary." *Save the Bay, Inc. v. U.S. Army,* 639 F.2d 1100, 1102 (5th Cir. 1981) (citing Fed. R. Civ. P. 12(h)(3)); *see also Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 152 (1908) ("[I]t is the duty of this court to see to it that the jurisdiction of the circuit court, which is defined and limited by statute, is not exceeded. This duty we have frequently performed of our own motion."). The Court therefore does so here, both as it concerns Defendant Loyd and Alabama Department of Human Resources.

6

"[a] party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). The plaintiff must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). These requirements apply to *pro se* litigants, although courts give a "liberal construction" to *pro se* pleadings. *Holsomback v. White*, 133 F.3d 1382, 1386 (11th Cir. 1998). This leeway is not limitless, as courts cannot serve as "de facto counsel for a party, or . . . rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (citation omitted).

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). Shotgun pleadings generally present in one of four ways: (1) a complaint "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; (2) a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that fails to separate "into a different count each cause of action or claim for relief"; and (4) complaints containing "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1321–23. Each of these types of pleadings fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. And while courts "construe *pro se* pleadings liberally, holding them to a less stringent standard than those drafted by attorneys," *Arrington v. Green*, 757 F. App'x 796, 797 (11th Cir. 2018), courts "have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).

7

Here, the Amended Complaint constitutes the second and fourth type of shotgun pleadings. The Amended Complaint is replete with conclusory and vague allegations and labels that are not connected to any particular facts or cause of action. Indeed, the Amended Complaint is rife with conclusory legal labels, with no explanation or factual support. For example, the Amended Complaint contains multiple claims against multiple defendants, but it does not specify which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. It identifies five counts, but the counts are labels only and contain no allegations whatsoever. These allegations not only constitute a classic shotgun pleading but also are far from sufficient to state a claim.[5]  Accordingly, the Amended Complaint is also due to be dismissed as a shotgun pleading.

Although Harrison is proceeding pro se, she is "still required to conform to procedural rules, and the court is not required to rewrite a deficient pleading." *Washington v. Dept. of Children and Families*, 256 F. App'x 326, 327 (11th Cir. 2007).  The Court will not do so here.  And because of abstention principles, Harrison's litigation history involving the same state court custody proceeding over which she has filed three previous federal lawsuits, and given the fact that she already has amended her complaint on a previous occasion, Harrison will not be afforded an opportunity to amend it again.

Accordingly, it is **ORDERED** as follows:

(1)    The Order (doc. 4) of referral, dated July 23, 2025, is **VACATED**;

(2)    The *Motion to Dismiss Amended Complaint* filed by Defendants Angie Flourney and Marcus Judkins (doc. 52) is **GRANTED**;

(3)    The *Motion to Dismiss Plaintiff's Amended Complaint* (doc. 57) filed

---

[5] The Court also notes that it appears Plaintiff used the assistance of generative AI to draft her Complaint. As is the case here, AI drafting assistance does not automatically turn an inadequate pleading into a legally sufficient one.

by Defendant Marilyn Loyd is **GRANTED**, but for the reasons stated in this Order;

(4)    The *Motion to Dismiss* (doc. 60) filed by Defendants Olasta Finley and Gwen Finley is **GRANTED**,

(5)    The *Motion to Dismiss* (doc. 61) filed by Defendant Lauren Lauderdale is **GRANTED**;

(6)    This Court lacks jurisdiction and decides to abstain from hearing Plaintiff's disputes;

(7)    This case is **DISMISSED** in its entirety without prejudice;

(8)    The Clerk of Court **SHALL** terminate this case; and,

(9)     A separate final judgment **SHALL** be entered.

**DONE**, on this the 17th day of March 2026.

R. AUSTIN HUFFAKER, JR.
CHIEF UNITED STATES DISTRICT JUDGE